IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRENDA BROWN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) Civil Action No. 16-cv-11152 |
| vs. | ) |
| | ) |
| KELLY SERVICES, INC. | ) Judge Marvin E. Aspen |
| | ) |
|     Defendant. | ) |

**PLAINTIFF BROWN'S MEMORANDUM OF LAW
IN OPPOSITION TO THE DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

Marshall J. Burt, Esq.
The Burt Law Group, Ltd.
77 West Washington Street
Suite 1300
Chicago, IL 60602
(312) 419-1999
marshall@mjburtlaw.com

**TABLE OF CONTENTS**

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      FACTS SUPPORTING THE DENIAL OF SUMMARY JUDGMENT.. . . . . . . . . . . . . . 1

        A.      Brown's Background and her Hiring by Defendant.. . . . . . . . . . . . . . . . . . . . . . . . . 1

        B.      Brown's Complaints about Discrimination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        C.      Brown Feels She Is Unwanted at Kelly after Her
              Complaint of Discrimination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        D.      Defendant's Conflicting Reasons for Terminating
              the Temporary Recruiters.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        E.      Defendant's Inconsistences over the Identity of the Decision-Maker. . . . . . . . . . . 5

        F.      There Was No Workforce Reduction of Temporary
              Recruiters Except for Brown. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.     ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      Summary Judgment Standards.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B.      Defendant's Motion must Be Denied Because it Is Untimely . . . . . . . . . . . . . . . . 6

        C.      A Genuine Issue of Material Fact Precludes Summary Judgment.. . . . . . . . . . . . . 7

              1.      The Evidentiary Standards for Establishing Causation. . . . . . . . . . . . . . . 7

              2.      Defendant's Inconsistencies Over the Termination
                      Decision Precludes Summary Judgment. . . . . . . . . . . . . . . . . . . . . . . . . . 9

              3.      The Proximity between Brown's Complaint
                      and her Termination Satisfies Causation. . . . . . . . . . . . . . . . . . . . . . . . . 11

              4.      Defendant's Untruthfulness Creates an Inference
                      of Retaliatory Animus Precluding Summary Judgment . . . . . . . . . . . . . 12

              5.      Brown has Established Causation under *McDonnell Douglas*. . . . . . . . 13

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Introduction**

Pursuant to LR 56.1 (b)(2), the Plaintiff Brenda Brown submits this Memorandum of Law in Opposition to the Defendant's Motion for Summary Judgment. As an initial matter, the Defendant's Motion must be denied outright as untimely because it was filed without leave of court substantially more than 30 days following the close of discovery in violation of FED. R. CIV. P. 56(b). While this blatant Rule violation dooms the Defendant's Motion, the Motion is also substantively untenable. Without waiving the Defendant's violation of Rule 56(b), the Plaintiff will address the substance of the Motion as an alternative basis for its denial.

The Defendant's motion rests on the faulty premise that the individual making the decision to end Brown's employment was unaware of her discrimination complaint. But a material dispute exists over the actual identity of that decision-maker. Based on the Defendant's lies, its shifting positions, and the close proximity between Brown's complaint to her manager Lammers and her termination by Lammers, a jury may infer that Lammers terminated Brown because of that complaint. Accordingly, summary judgment is improper.

**I. FACTS SUPPORTING THE DENIAL OF SUMMARY JUDGMENT**

**A. Brown's Background and her Hiring by Defendant**

Brown sought a career in human resources and talent acquisition.[Plf Stmt ¶ 1] After receiving a bachelor's degree from DeVry University, she worked for DeVry as a recruiter and admissions advisor.[Plf Stmt ¶ 1, 2] Although it was a full-time job, paying a salary of $20.91 per hour, it was unsatisfying to Brown because she did more sales than recruiting.[Plf Stmt ¶ 2]

While still employed at DeVry, Brown began speaking to Jennifer Lammers in March 2016 about a recruiting career at Kelly Services. Lammers is the branch manager of Kelly Services' Romeoville and Frankfort offices and needed more recruiters because the year was "crazy".[Plf Stmt

1

¶ 3-4] As Lammers described it, "the job market was very tight and Kelly Services needed more people brought through the door to fill its accounts."[Id.] Accordingly, Defendant was hiring recruiters because it expected continuous growth. It did not base the success of its business around peaks that come and go.[Plf Stmt ¶ 5]

Lammers and Brown met to discuss the recruiting position after several telephone conversations.[Plf Stmt ¶ 6] They discussed Brown's desire for a career in human resources. Lammers explained that although the position was not human resources, recruiters have a lot of human resource responsibilities that can also get Brown to the next level.[Id.]

Brown informed Lammers she did not want a temporary position with a limited duration but sought a full time recruiter position at Kelly Services.[Plf Stmt ¶ 7] Lammers explained the job started as a "temp-to-hire position", but Brown would eventually be made a full time salaried employee. Lammers, however, could not give a specific date when that would occur.[Plf Stmt ¶ 8]

From their discussions, Lammers knew Brown would be leaving her full time job at DeVry and would also take a pay cut to join Kelly as a recruiter. Because Lammers believed Brown was very good, she knew she had to get Brown more money than the $14 to $16 per hour they were paying at that time.[Plf Stmt ¶ 9] Indeed, Brown was the only person Lammers had talked to about the position and had been waiting for Brown.[Plf Stmt ¶ 10] On May 9, 2016, Lammers made the ultimate decision to hire Brown at $17 an hour for a 40 hour week.[Def. Stmt. ¶ 6; Plf Stmt. ¶ 9]

Brown worked as a recruiter out of the Romeoville office but also helped at the Frankfort office.[Def. Stmt ¶ 6] Lammers believed Brown was a good performer and expressed no criticism of her work. Similarly, no one complained about Brown's job performance and she had a good working relationship with other employees.[Def. Stmt ¶ 13; Plf Stmt ¶ 11] Yet, in the Answer to the Complaint, Defendant denied Brown performed her job duties in a satisfactory manner to warrant

2

continued employment. It now concedes that answer was false.[Plf Stmt ¶ 12]

### B. Brown's Complaints about Discrimination

While working in the Romeoville office, Brown perceived that her fellow recruiter, Spisak, was engaging in discriminatory conduct regarding the treatment and placement of African-American job applicants.[Def. Stmt ¶ 25] Brown observed Spisak ignoring African Americans while getting up to greet and help non-African Americans.[Plf Stmt ¶ 13] Spisak was also observed assisting applicants with their resume but told some African-Americans to go to the library to make their resume before they could apply.[Plf Stmt ¶ 14] Plaintiff also noticed that Spisak was rude and nasty to African-Americans, but not to other job applicants.[Plf Stmt ¶ 15]

These observations and others prompted Brown to meet with Lammers on June 20, 2016.[Def. Stmt ¶ 24] Although Brown does not recall using the term "race discrimination" in that meeting, she did mention "race", "African Americans" and "blacks" to get Lammers to "understand the issue that she was seeing Spisak do to African-Americans". Thus, the gist of the conversation was about discrimination whether or not the actual word was used.[Plf Stmt ¶ 16] Lammers, however, denies discussing Spisak's treatment of African-American applicants or that the applicant's race was ever mentioned.[Plf Stmt ¶ 17]

That initial meeting with Brown caused Lammers to call Spisak and Conyers into the meeting to discuss interviewing and not treating anyone differently.[Def. Stmt ¶ 26; Plf Stmt ¶ 18] At this meeting with everyone present, Brown specifically used the term "discrimination".[Plf Stmt ¶ 19] Spisak admitted that Brown complained about discrimination to management during this meeting.[Plf Stmt ¶ 20] Lammers, on the other hand, denies Brown complained about discrimination.[Plf Stmt ¶ 21] According to Lammers, there was nothing said by Brown that gave her the indication Brown was complaining about discrimination.[Id.]

3

**C.  Brown Feels She Is Unwanted at Kelly after Her Complaint of Discrimination**

The same morning after the June 20th meeting, Lammers suggested Brown work at the Frankfort office 1-2 days a week.[Plf Stmt ¶ 22] Brown stayed in Romeoville through Wednesday, June 22nd during which time she felt that Spisak was hostile and rude to her.[Plf Stmt ¶ 23] She also felt that Lammers was no longer as open with her and did not take her to a previously scheduled client meeting.[Id; Def Stmt ¶ 33] Brown was then sent to the Frankfort office for the next three business days, from Thursday June 23 to June 27th.[Plf Stmt ¶ 24] These events made Brown feel she was no longer wanted and was being forced out.[Def. Stmt ¶ 33; Plf Stmt ¶ 25] On Friday, June 24th, Brown wrote Lammers saying she was not going to quit.[Plf Stmt ¶ 26]

On Monday, June 27th, Brown meet with Lammers at the Frankfort office and complained about how Spisak was treating her.[Plf Stmt ¶ 28] Lammers responded by asking Brown if she wanted to give her two-week notice, to which Brown replied no. Brown said she needed the job and was banking on this to work.[Plf Stmt ¶ 28] The next day, Lammers told Brown her assignment was terminated, effective three days later on July 1st.[Def. Stmt ¶ 29]

**D.  Defendant's Conflicting Reasons for Terminating the Temporary Recruiters**

Lammers prefaced the termination conversation saying it had nothing to do with Brown's concerns or the previous meeting.[Def Stmt ¶ 30] Instead, she said it was for budgeting reasons.[Def Stmt ¶ 29] Yet, Spisak said it was for lack of work.[Plf Stmt ¶ 29] Hink, on the other hand, explained that the in-house recruiters were let go "because of the ebb and flows of our business." [Plf Stmt ¶ 31] Hink, however, did not know specifically what the ebb and flow was other than "business drove the decision."[Id.] Regardless of the varied reason given, there was plenty of work for Brown to perform at both the Frankfort and Romeoville offices.[Plf Stmt ¶ 30] But Hink stated that the decision to let temps go is not made on a branch by branch basis. Rather, it is whether the business

4

for the area is growing or declining.[Plf Stmt ¶ 32] Defendant has no documents or communications supporting any of the reasons for the termination.[Plf Stmt ¶ 32] Nor has the Defendant provided any consistency as to the identity of the person making the decision to terminate Brown.

      **E.     Defendant's Inconsistences over the Identity of the Decision-Maker**

Defendant disclosed Lammers in its Initial Rule 26a Disclosures but never disclosed either Hink and Beckner as having knowledge concerning Plaintiff's employment.[Plf Stmt ¶ 34] Subsequently, the Defendant's Interrogatory Answers stated that Hink and Beckner were the exclusive participants in the decision to end the in-house temporary recruiters, including Brown.[Plf Stmt ¶ 35] Later, the Defendant served Supplemental Rule 26a Disclosures identifying Hink and Beckner as having knowledge of Plaintiff's employment. Hink, however, testified on the last day of discovery that Al Sower was solely responsible for the termination decision.[Def Stmt ¶ 40, 41; Docket #31, Minute order dated 4/21/17] Sower was never disclosed in any capacity in the Defendant's Initial Rule 26a Disclosures, its Supplemental Rule 26a Disclosures, or its Interrogatory Answers.[Plf Stmt ¶ 34, 35, 36]

      **F.  There Was No Workforce Reduction of Temporary Recruiters Except for Brown**

The Defendant claims business needs required that all of the in-house temporary recruiters had to be cut by July 1, 2016 [Def Stmt ¶ 42], Yet, only Brown was affected. Specifically, the Defendant identified Jason Dehn and Bryan Ramirez as the only other temporary in-house recruiters terminated as a result of the workforce reduction.[Plf Stmt ¶ 38] Bryan Ramirez, however, was terminated on July 25, 2016 for performance reasons.[Def. Stmt ¶ 54] Jason Dehn walked off the job on July 12, 2016.[Def. Stmt ¶ 53] Consequently, Brown was the only temporary in-house recruiter terminated on July 1, 2016 or at any other relevant time due an alleged "workforce reduction".[Plf Stmt ¶ 38] After Brown's termination, the Defendant, began re-hiring temporary in-

5

house recruiters sometime before November 29, 2016 .[Plf Stmt ¶ 38] Defendant cites no evidence Brown was offered such a position after her termination.

## II. ARGUMENT

### A. Summary Judgment Standards

Summary judgment can only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a summary judgment motion, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) Rather, "the court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id*. *See, also, Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)

Before addressing the substance of a summary judgment motion, the Court must first determine whether it was timely under Rule 56(b). If not, then the motion must be denied.

### B. Defendant's Motion must Be Denied Because it Is Untimely

Fed.R.Civ. P. 56(b) sets forth the timing requirements for filing a motion for summary judgment. It states:

> (b) TIME TO FILE A MOTION. Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

Neither this Court nor the local rules have set a time for filing a summary judgment motion. Accordingly, Rule 56(b) required the Defendant to file its motion 30 days after the close of discovery. Discovery closed on August 1, 2017.[Docket #31] Thus, the Defendant had to August 31,

6

2017 to file its motion. It did not. Instead, it filed the motion on September 18, 2017 without leave of court, without seeking an extension under Rule 6(b), and without even noticing the motion for hearing as required by LR 5.3 (b).[Docket # 40]

Stating the obvious, the federal rules of civil procedural are not optional. *Peters v. Wal-Mart*, 876 F. Supp. 2d 1025, 1029 (N.D. Ind. 2012). This Court has discretion to reject late filings that violate the Rules and its judgment will only be disturbed when it abuses that discretion. *Wienco, Inc. v. Katahn Associates*, 965 F.2d 565, 567-68 (7th Cir. 1992)

In determining an abuse of discretion, the "excusable neglect" standard applies. *Wienco,* 965 F.2d at 567-68  The excusable neglect standard, however, can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules. *Prizevoits v. Ind. Bell Tel. Co.*, 76 F.3d 132, 133 (7th Cir. 1996). Here, the Defendant simply ignored the plain language of the Rule 56(b) by filing an untimely motion without leave of court. Under these circumstances, the motion must be denied or stricken.

Alternatively, this Court must deny the Motion because factual disputes exist precluding summary judgment. Plaintiff is also entitled to an award of attorneys' fees as sanctions for having to respond to an untimely motion. Indeed, in *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1268 (7th Cir. 1992), the Seventh Circuit affirmed an award of attorney's fees as a sanction for responding to an untimely, but successful, summary judgment motion. Here, the Defendant's summary judgment motion does not even have merit.

    **C.**    **A Genuine Issue of Material Fact Precludes Summary Judgment**

        **1.**    **The Evidentiary Standards for Establishing Causation**

The parties agree that Brown must prove her retaliation case by showing that 1) she engaged in protected activity, 2) that she suffered an adverse action and 3) there is a causal connection

between the protected activity and the adverse action. *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017) The Defendant only disputes causation. [Def. Br. p. 8]

A plaintiff demonstrates a causal connection by showing that the defendant "would not have taken the adverse ... action but for [her] protected activity." *Greengrass v. International Monetary Systems Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015) A plaintiff may "also supply the causal link through circumstantial evidence from which a jury may infer intentional discrimination." *Baines*, 863 F.3d at 661. "If a plaintiff can assemble from various scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action, then summary judgment for the defendant is not appropriate." *Baines*, 863 F.3d at 661-62, *citing Morgan v. SVT, LLC*, 724 F.3d 990, 996 (7th Cir. 2013). Circumstantial evidence may include (1) suspicious timing; (2) ambiguous statements; (3) evidence that similarly situated employees out-side of the protected group received better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action. *Monroe v. Indiana DOT*, 2017 U.S. App. LEXIS 17977, *13 (7th Cir. 2017) Particularly persuasive circumstantial evidence is proof that the employer lied about the reason for an adverse action. This permits a jury to infer the decision was motivated by retaliatory animus. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000).

The Defendant argues that Brown cannot establish her prima facie case because Lammers allegedly did not make the decision to end her position. Instead, it asserts "there are two layers of management between the individual who made the decision, Al Sower, and the highest ranking individual with knowledge of Plaintiff's complaints, Lammers." [Def. Br. p. 10] In between were Beckner and Hink who Defendant now claims simply relayed the directive. The jury, however, can reject this story because of the Defendant's inconsistent positions and lies.

8

### 2. Defendant's Inconsistencies Over the Termination Decision Precludes Summary Judgment

The Defendant has been inconsistent over the identity of person decising to end Brown's job. Neither Sower, Beckner nor Hink were disclosed as decision-makers in the Defendant's Initial Rule 26a Disclosures served six weeks after filing its answer to the Complaint. [Plf Stmt.¶34 And Docket #8]The omission from its mandatory disclosures of such critical witnesses to the Defendant's case creates an inference these witnesses had no information concerning Brown's termination. See, FED. R. CIV. P. 37(C)(1)(mandates that if a party fails to identify a witness as required by Rule 26(a), the party is not allowed to use that witness) In its subsequent Interrogatory Answers, the Defendant disclosed Beckner and Hink as the only participants in the decision to end Brown's job. This interrogatory answer was followed with a Supplemental Rule 26a Disclosure again identifying only Beckner and Hink as having information for the termination decision. Absent from both the Interrogatory Answer and the Supplemental Disclosures was Sower.

It was only during Hink's deposition taken the last day of discovery did she attribute the entire termination decision to Sower. Hink, in turn, characterized her and Beckner's roles as passive conduits simply relaying the directive to Lammers, not the active decision-makers attested to in the Interrogatory Answers. Based on these inconsistencies, a reasonable jury could infer that Defendant is now lying about Sower being the decision-maker since that testimony is refuted by the Defendant's Interrogatory Answer identifying only Hink and Beckner as the decision-makers. Since Hink and Beckner now deny being the active decision makers, the jury can reasonably conclude that the only person left - Lammers, the same person who made the ultimate decision to hire Brown - also decided to terminate her because of her complaints. Consequently, the Defendant itself created a material dispute over the identity of the decision-maker that precludes summary judgment.

But the credibility of the Defendant's story is strained further because there is not a single document or communication relating the alleged decision to cut all in-house temporary recruiter positions due to business needs. Nor has Defendant produced any document supporting budgetary, business and the lack of work reasons relied on for reducing its workforce. The total absence of such documents casts suspicions over the decision itself. *See, e.g..Ledbetter v. Good Samaritan Ministries*, 777 F.3d 955, 958 (7th Cir. 2015)(reversing summary judgment where absence of documents and inconsistencies create too many loose ends) These unsupported reasons are also inconsistent with Lammers' needed to hire Brown just six weeks earlier due to a "crazy" job market.

Specifically, Brown was hired May 9, 2016 because the market was tight and Defendant expected continuous growth. Accordingly, Lammers lured Brown away from a full time job to accept an in-house temporary position with the promise of making her permanent. But within a week of Brown's complaint of discrimination and a day after complaining about Spisak's hostility arising from that complaint, Brown's assignment came to an abrupt end on June 28th under the guise of an alleged "workforce reduction."

Hink stated the reason for the workforce reduction was due to the ebb and flow of the business. This is inconsistent with the earlier decision to hire more recruiters, which was based on expected growth, not "the peaks that come and go." Similarly, while Hink stated the decision to end the temporary in-house recruiters was not based on the needs of each of the branches, but rather on the growth or decline of business for the area as a whole, only Brown was let go. The two other temporary recruiters Defendant identified as being laid off for the same reason as Brown were not even laid off. Dehn walked off the job and Ramirez was terminated for performance weeks after Brown was terminated. Based on the Defendant's inconsistencies and shifting positions, a jury can reject not only the Defendant's belated attempt to pin the termination decision on Sower, but also

10

the very basis for the decision itself.

### 3. The Proximity between Brown's Complaint and her Termination Satisfies Causation

The Defendant argues that Brown's reliance on the proximity between her discrimination complaint and the termination decision eight days later is insufficient to create a question of material fact on the issue of causation.[Def. Br. p. 10] The Defendant is wrong.

The Seventh Circuit has repeatedly held that suspicions timing alone may create a triable issue on causation. *Loudermilk v. Best Pallet Co.*, LLC, 636 F.3d 312, 315 (7th Cir. 2011). Indeed, a week generally satisfies the causation nexus. *McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 797 (7th Cir. 1997)("[w]e have found the causal nexus sufficiently demonstrated when the time period between the filing of a complaint and the adverse action was ... one week"); *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1312, 1314-15 (7th Cir. 1989) (one week). Brown was told of the termination six business days after she complained, three of which she was not even in the Romeoville office and only one day after complaining about Spisak's hostility.

Given the sequence of events within such a close temporal proximity, including the 1) Plaintiff's complaint on June 20th; 2) her removal to the Frankfort office on June 23rd to June 27th, 3) the failure to take her on an planned client visit; 4) her complaint on June 27th about Spisak's hostile conduct; 5) Lammers asking Brown on June 27th if she wanted to resign; and 6) telling Brown on June 28th that her position was eliminated, create a reasonable inference of causation to establish a prima facie case. *Benuzzi v. Bd. of Educ. of Chi.*, 647 F.3d 652, 665 (7th Cir. 2011)("adverse actions occasionally come so close on the heels of a protected act that an inference of causation is sensible") Furthermore, as pointed out in *Loudermilk,* a jury, not a judge, should decide whether the inference is appropriate. *Loudermilk*, 636 F.3d at 315.

11

Defendant cites *Mirocha v. Palos Cmty. Hosp.*, 240 F. Supp. 3d 822 (ND IL 2017) for the proposition that timing alone is rarely sufficient to create an inference of causation.[Def. Br. P. 10] Timing, however, did not help the Plaintiff in *Mirocha* because it was undisputed that the person recommending termination did not learn of the protected activity until after the termination. *Id.*, 240 F. Supp. 3d at 846. Unlike *Mirocha,* a material dispute exists over the identity of the decision-maker. Moreover, it undisputed that Lammers knew of Brown's protected activity before terminating her.

Timing alone is, therefore, sufficient to deny Defendant's Motion for Summary Judgment. See, *Wembi v. Metro Air Service*, 195 F. Supp. 3d 957, 972-973 (N.D. Ill. 2016)(Feinerman, J)(denying summary judgment where adverse action occurred a week after complaint) But Brown's case does not rest on timing alone. The jury can also infer a retaliatory animus based on Brown's proof the employer lied about her complaint and then sought to cover it up. *Baines,* 863 F.3d at 665.

### 4. Defendant's Untruthfulness Creates an Inference of Retaliatory Animus Precluding Summary Judgment

Brown testified she complained of discrimination at the June 20th meeting. This was corroborated by Spisak and is undisputed by Defendant (for purposes of the motion). Evidence of Brown's complaint cannot be reconciled with Lammers' testimony that Brown made no such complaint or said anything from which discrimination could be inferred. Because the Court is required to accept Brown's testimony as true on summary judgment, then that also provides evidence that Lammers lied. *See, Baines*, 863 F.3d at 665. In reversing summary judgment, the *Baines* court explained: "Because a fact-finder may infer intentional discrimination from an employer's untruthfulness, evidence that calls truthfulness into question precludes a summary judgment." *Baines*, 863 F.3d at 665 (7th Cir. 2017) *See also*, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000) ("[I]t is permissible for the trier of fact to infer the ultimate fact of

discrimination from the falsity of the employer's explanation."); *Ledbetter v. Good Samaritan Ministries*, 777 F.3d 955 (7th Cir. 2015)(reversing summary judgment where evidence called into question the employer's credibility). But the Defendant's lies and inconsistencies do not stop with Defendant falsely denying that Brown complained about discrimination. Rather, they taint the Defendant's entire case as follows:

1. Lammers' false denial that Brown complained to her on June 27, 2016 about Spisak being hostile as a result of Brown's discrimination complaint again her. Compare Plf Stmt ¶ 27 with Plf Stmt ¶ 28.

2. Falsely denying in its Answer to the Complaint that Brown performed her job duties in a satisfactory manner to warrant continued employment when Lammers' admitted she did. See, Plf Stmt ¶ 11 and 12.

3. Claiming that Hink and Beckner were the only people participating in the decision to end Brown's job assignment when Hink testified they had nothing to do with the decision but merely relayed the directive to Lammers. Compare Plf Stmt ¶ 35 with Def. Stmt ¶ 40.

4. Identifying Dehn and Ramirez as having their job assignments terminated for the same reason as Brown where the undisputed evidence shows both Dehn and Ramirez were terminated weeks after Brown for walking off the job and poor performance, respectively. Compare Plf Stmt ¶ 38 with Def Stmt ¶ 52-54.

The Defendant's untruthfulness about material issues, coupled with the suspicious timing of her termination are sufficient "scraps of circumstantial evidence" to allow a jury to find a retaliatory motive for the adverse action. Accordingly, summary judgment for the Defendant is improper. *Baines*, 863 F.3d at 661-62.

### 5. Brown has Established Causation under *McDonnell Douglas*

Brown may also rely on the *McDonnell Douglas* framework as part of the "pile" of the evidence used to infer intentional discrimination. *See Volling v. Kurtz Paramedic Servs.*, Inc., 840 F.3d 378, 383 (7th Cir. 2016) (noting that McDonnell Douglas is "a common, but not exclusive, method of establishing a triable issue of intentional discrimination"). Under that framework, Brown

13

can establish an inference of retaliation by showing: (1) she is a member of a protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of the protected class received more favorable treatment. *Pearson v. Illinois Bell Telephone Co.*, No. 15 C 653, 2016 U.S. Dist. LEXIS 175422, at *18-19 (N.D. Ill. Dec. 20, 2016). If the Plaintiff makes her prima facie case, the burden shifts to the Defendant to give a non-discriminatory reason for the adverse action. If the Defendant meets its burden, then the Plaintiff must show that the defendant's explanation was just a pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973)

The Defendant does not dispute Brown's complaint was protected activity and her termination was an adverse action. While it initially denied that Brown met its legitimate expectations, Defendant has since conceded that the denial was false. Finally, Brown has shown she was treated less favorably than any other similarly situated employees, including Dehn and Ramirez because only Brown's assignment was terminated on July 1st and no other employee complained about discrimination.

The Defendant, however, argues that Brown cannot establish that the end of her assignment for budgetary reasons was a pretext for retaliation. But the Defendant offers no evidence supporting that reasons, other than a vague, conclusory statement of "business necessity". This reason directly conflicts with the need to hire Brown six weeks earlier due to growth in the business. Moreover, Defendant has no documents, no memoranda, no correspondence, no internal analysis or anything else to show a workforce reduction. Similarly, the only explanation Hink could provide for letting Brown go was "because business drove that decision. That's - I don't have any other answer other than that" [Plf Stmt ¶ 31] But if business drove the decision to eliminate all of the temporary in-house recruiters, the decision only applied to Brown. The other individuals Defendant said were

14

affected by the decision, Dehn and Ramirez, were each were terminated weeks after Brown and for entirely different reasons - performance and walking off the job.

The Defendant suggests in its brief that the circumstances surrounding the termination of these "other two in-house temporary recruiters do not support a reasonable inference that Plaintiff's in-house position ended to retaliate rather than for budgetary reasons." [Def. Br. P. 13] But the evidence clearly supports an inference of retaliation, particularly in light of its false Interrogatory Answer that their assignments were ended for the same reason as Brown's. While Hink suggests that Ramirez's assignment was extended because he was filling an open position, that itself is inconsistent with her testimony that termination decisions are based on the needs of the entire area, not on a branch by branch basis. In the end, however, only Brown was let go for these alleged budgetary reasons. Given the inconsistencies, contradictions and weaknesses in the Defendant's stated reason surrounding the termination, a jury could find the reason unworthy of credence, thereby precluding summary judgment. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007)

## Conclusion

For the foregoing reasons, the Defendant's motion for summary judgment must be denied, and the Plaintiff awarded such additional relief that the Court deems proper, including awarding the Plaintiff her attorneys' fees as sanctions for responding to an untimely motion.

Respectfully submitted,

BRENDA BROWN

By:/s/ *Marshall J. Burt*
      Her attorney

15

Marshall J. Burt, Esq.
The Burt Law Group, Ltd.
77 West Washington Street
Suite 1300
Chicago, IL 60602
(312) 419-1999
marshall@mjburtlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2017, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of this filing to the following attorneys of record:

Steven Potter
Rick Patterson
Potter, DeAgostino, O'Dea & Patterson
2701 Cambridge Court #223
Auburn Hills, MI 48326

Angela McManus Sekerka
Erin Kathleen Schreiber
Wilson, Elser
55 W. Monroe St., Ste 3800
Chicago, IL 60603

/s/ Marshall J. Burt