IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRENDA BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 1:16-cv-11152 |
| | ) | |
| v. | ) | Judge Marvin E. Aspen |
| | ) | |
| KELLY SERVICES, INC, | ) | Magistrate Judge Sheila M. Finnegan |
| | ) | |
| Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.    **Introduction**

Plaintiff attempts to distort the facts and take matters out of context to survive Defendant's Motion for Summary Judgment. The simple fact is that Plaintiff has no evidence that the individual who made the decision to end her assignment was aware of her asserted protected activity. Absent some evidence of knowledge by the decision maker, there can be no retaliation. The knowledge requirement exists under both the direct and indirect method of proof, with "proof of retaliation under the indirect method presuppos[ing] that the decision-maker knew that the plaintiff engaged in a statutorily protected activity, because **if an employer did not know the plaintiff made any complaints, it cannot be trying to penalize him for making them.**" *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668–669 (7th Cir.2006) (citation omitted) (internal quotation marks omitted) (emphasis added).

The undisputed evidence in this case demonstrates that information about Plaintiff's claims on June 20th were not communicated above the branch level by Lammers or anybody else to Hink, Beckner, or any other management personnel (Defendant's Statement of Facts (SOF) No. 35-39). At the same time, there is no evidence to dispute that Lammers was given the directive to end Plaintiff's assignment by her superior, Hink, and that Lammers did not make the decision herself (Defendant's SOF No. 40-41; Plf Ex. B, Answers to Interrogatories No. 1 and 5). Thus, no connection can be made between knowledge of Plaintiff's protected activity and the decision to end her assignment. As a result, Plaintiff's retaliation claim must be dismissed.

Instead of identifying some evidence of knowledge of the protected activity by any Kelly employee above the branch level, Plaintiff argues she can establish proximate cause without knowledge of protected activity because different witnesses possess different knowledge about the decision making process. Plaintiff claims the factual discrepancies constitute a material dispute of facts and lies by Defendant that allows a jury to infer retaliatory intent despite the lack of knowledge of the protected activity by the decision maker. Plaintiff offers no authority to support such a contention.

## II.     Reply to Plaintiff's Statement of Facts

Plaintiff's statement of facts included in her Memorandum is simply a recitation of the facts asserted in her Statement of Additional Facts (Dkt. # 54). Defendant incorporates and reiterates its responses to the assertions in Plaintiff's Statement of Additional Facts rather than restating its responses here. Defendant feels compelled to address some of the factual assertions here to clarify the facts.

Plaintiff's statement of facts suggests that at the time she was hired she was guaranteed she would become a full-time Kelly employee. Any such suggestion or attempted inference is not supported by the record. First, Plaintiff's Employment Agreement with Kelly under General Information sets forth that her employment with Kelly is not guaranteed, is considered at will, that it can be ended by either Kelly or herself at any time, that her assignment can be ended at any time, and that no Kelly representative other than the CEO has the authority to guarantee employment (Defendants Exhibit I, Employment Agreement). Second, consistent with Plaintiff's Employment Agreement Ms. Hink testified that when hiring a temporary in-house employee there is never a guarantee of full time employment, that there was no specific duration for Plaintiff's assignment, and that the length of the assignment would be based on business needs (Def. Exhibit E, Hink's Dep., p. 17, ln 2 - 9).

Plaintiff also attempts to fabricate a factual issue regarding Defendant's response to an allegation about Plaintiff's work performance in the Complaint. Defendant admits that at the time it filed its Answer it was still gathering information regarding Plaintiff's employment with Kelly and her retaliation claim and responded to the Complaint's allegation based on the information available at the time. This point is stated in Defendant's response to an interrogatory about Plaintiff's job performance, where it indicated that Kelly was not aware of any issues with Plaintiff's job performance (Plf Ex. B, Defendants Answers to Interrogatories, No. 4). After counsel for Defendant was able to gather information about Plaintiff's claims and employment, it provided that information in response to discovery requests. Plaintiff's attempt to manufacture a disputed issue where none exists in this regard should be rejected.

Plaintiff's discussion about her complaints will not be addressed because Defendant is not contesting the issue of her engaging in protected activity for purposes of this Motion.

Plaintiff claims she was treated differently after the meeting on June 20th. She references working an extra day in the Frankfort office, however, Plaintiff's Exhibit D indicates that Plaintiff will spend 1-2 days per week to get extra training (Plf Exhibit D, Brown 24). If Lammers was retaliating against Plaintiff and forcing her out for her alleged complaints she would not have offered her additional training. Plaintiff sets forth her personal feelings about her interactions with Kelly employees but does not offer any evidence that the information she allegedly shared with Lammers was ever conveyed to any Kelly personnel outside of the branch office.

Plaintiff also attempts to mislead the court by claiming that there are conflicting reasons for the end of Plaintiff's assignment. Plaintiff cites Spisak as saying it ended for lack of work. The statement fails to place the statement from Spisak in context of the hearing. While the words "lack of work" were stated first, two lines later Spisak explained that it was due to budget reasons or lack of work to justify her position as an in house temporary (Plf Exhibit C, Transcript, p. 12, ln 16-22). Also, Spisak was not involved in making the decision or conveying the decision to Plaintiff. Lammers indicated the position was eliminated due to budget reasons and Hink testified she was given the directive to end the in-house temporary assignments and relayed that information to Lammers (Defendants SOF No. 29, 40, 42). The fact that there might have been work for Plaintiff to do at the branch level was irrelevant to the decision making process undertaken by management based on the performance of the Chicagoland territory and does not create any factual issues about the reason Plaintiff's assignment was ended.

Plaintiff's asserted inconsistency about who made the decision to end Plaintiff's assignment is resolved when the identity of the person providing the information is considered. As an initial point, the fact that Hink and Beckner were not included in Defendant's initial disclosures has no bearing on who made the decision and creates no inconsistency in this case. Hink and Beckner were included in supplemental disclosures about 60 days later (Plf Exhibit F, Dkt. No. 56). Hink and Beckner were also identified in discovery responses that were prepared with the assistance of Lammers (Plf Exhibit B, No. 1 and 5). Hink testified that she relayed the directive she was given by Beckner to Lammers (Defendant's SOF No. 40), which is consistent with Lammers identifying the decision makers as Beckner and Hink in response to Plaintiff's interrogatory on the issue. When Hink was deposed she provided additional information that she learned from Beckner about Sowers making the decision, but there is nothing to indicate that Hink conveyed Sowers role to Lammers. As a result, Lammers would have no knowledge of Sowers' involvement when responding to Plaintiff's Interrogatory No. 5.

Lastly, Plaintiff claims there was no elimination of in-house employees in the area. Plaintiff misstates Defendants Statement of Fact No. 42. That statement indicates that Lammers was told that Plaintiff's last day would be July 1st and that all in-house temporary positions had to be cut due to business reasons. It does not state that all in-house positions must be cut by July 1st as asserted by Plaintiff. The other two in-house temporary employees were gone by the end of the month. Jason Dehn's assignment ended July 12th (Defendant's SOF No. 53). Bryan Ramirez worked into the month of July because he was covering a vacancy rather than holding an extra position like Plaintiff, but his assignment was still terminated on July 26th (Defendant's SOF No. 50, 54). Plaintiff was

offered subsequent assignments through Kelly but indicated she was not interested (Defendant's SOF No. 55-62).

### III.     Reply to Argument[1]

Plaintiff correctly states that the parties do not disagree on the elements of her retaliation claim. Where the parties differ is whether Plaintiff must present evidence that the decision maker for the adverse action had knowledge of the protected activity. Defendant relies on the clear holdings of this Court and the Seventh Circuit which set forth that regardless of whether the direct or indirect method of proof is relied upon by Plaintiff the decision maker must have knowledge of the protected activity in order to take action in retaliation for that protected activity. As stated in *Tomanovich*: "proof of retaliation under the indirect method presuppos[es] that the decision-maker knew that the plaintiff engaged in a statutorily protected activity, because if an employer did not know the plaintiff made any complaints, it cannot be trying to penalize him for making them." *Tomanovich*, 457 F.3d at 668–69 (citation omitted) (internal quotation marks omitted). In addition, the court in *Nagle v City of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir 2009), held: "[Plaintiff] filed EEOC charges on January 19, 2005, but [plaintiff] has not shown that Chief Davis was aware that he filed a grievance in February 2005. This dooms his claim not only under the direct method, but under the indirect method." *See also, Isbell v Baxter Healthcare, Corp.*, 2017 WL 1196890, March 31, 2017 N.D. Ill. Case No. 15-7333 (Exhibit J) ("A showing that [the decision maker] was aware of the protected activity is fundamental to establishing retaliatory motive"); *Lugo v International Brotherhood of Electrical Workers Local #134*, 175 F.Supp.3d 1026, 1038 (N.D. Ill. 2016) ("To

---

[1] Plaintiff's Response raises, for the first time, a claim that Defendant's Motion for Summary Judgment is untimely. This issue is addressed in a separate motion being filed by Defendant concurrently with this Reply and will not be discussed herein.

start, there are no allegations . . . that [defendants] knew Lugo had filed an EEOC charge. Without such knowledge, none of the defendants could possibly (let alone plausibly) have retaliated against him based on the charge").

Here, Hink testified that Al Sowers gave Beckner the directive to end Plaintiff's assignment for budgetary reasons (Exhibit E, p. 28, ln 16-20). Beckner then told Hink, who then told Lammers (Exhibit E, p. 27, ln 17-21). Plaintiff admits that she cannot say that Beckner knew of her complaints from June 20th and that she has no evidence that Hink or Beckner were ever told about her complaints (Exhibit A, p. 49, ln 10-13; p. 49, ln 23 -p. 50, ln 4). Plaintiff can offer no evidence that her complaints from June 20th were ever reported to anybody outside the Romeoville branch office (Exhibit A, p. 22, ln 14 - p. 23. ln3; p. 49, ln 23 -p. 50, ln 4; Exhibit D, p 68, ln 6-9; Exhibit E, p. 25, ln 11 -p. 26, ln 5).

Instead of offering any type of evidence that any of her superiors outside the branch office were aware of her complaints on June 20th to support her retaliation claim, Plaintiff attempts to rely on scraps of what she claims is circumstantial evidence to create a question of fact about retaliation. The problem with this approach is that none of the asserted circumstantial evidence suggests that Sowers, Beckner, or Hink had knowledge of Plaintiff's protected activity. In terms used by Plaintiff, no amount of circumstantial evidence about peripheral issues would permit a trier of fact to conclude that discrimination motivated the adverse action absent evidence the person making the decision had knowledge of the protected activity.

Plaintiff first attempts to argue that conflicting evidence exists concerning who made the decision to end Plaintiff's assignment. Plaintiff offers no authority to support the assertion that not identifying the decision maker in initial disclosures creates an issue of who made the decision. As

discussed above, Beckner and Hink were identified in answers to interrogatories because the person answering those interrogatories, Lammers, only knew that the decision came from her superiors. The fact that Hink later clarified the issue with information that was not known to Lammers does not create an inconsistency. More importantly, there is no issue that the decision was not made by Lammers and was made by an individual that had no knowledge of Plaintiff's complaint on June 20th. Plaintiff's suggestion that the evidence allows a jury to conclude that Lammers somehow made the decision is illogical. Nothing would permit the conclusion that the decision to end Plaintiff's assignment was made at the branch level by Lammers. Plaintiff's attempt to create a discrepancy regarding where the decision was made does not provide circumstantial evidence that the decision was in retaliation for Plaintiff's complaints on June 20th.

Plaintiff also appears to fault Defendant for not being able to predict the future and know for a certainty what its business would be in the future. As testified to by Hink, the decision to end Plaintiff's assignment was based on the business of the territory rather than the business of the branch where she worked. Decisions regarding staffing levels to accommodate then existing business conditions are not for the Court but are left to the business judgment of company. Plaintiff's citation to *Ledbetter v Good Samaritan Ministries*, 777 F.3d 955, 958 (7th Cir. 2015), suggesting that a lack of documentation for a decision creates too many loose ends for summary judgment is misleading. The court in *Ledbetter* reversed the grant of summary judgment based on an number of items that it found odd, including: the form of the affidavits relied upon by defendants to provide a basis for the motion, ambiguous statements about when the decision to terminate was made, ambiguous statements about the basis for the termination, an implausible explanation about why the termination occurred at the time it did, inconsistencies between answers to discovery and

8

the same witnesses' statements in their affidavits, and the plaintiff being questioned about his protected activity prior to his termination. The foregoing circumstances do not exist in this case and the lack of specific documentation about the business decision alone does not justify the denial of summary judgment.

Plaintiff claims that the timing of her being notified about the end of her assignment alone is sufficient to establish causation. Absent some evidence of knowledge by the decision maker of the protected activity, the timing between the two events establishes nothing. Defendant cited the case of *Mirocha v Palos Cmty. Hosp.*, 240 F.Supp.3d 822 (N.D. Ill. 2017), which involved a four day gap between protected activity and adverse action, for the holding that speculation based on timing alone does not support a reasonable inference of retaliation and the point that when the decision maker does not have knowledge of the protected activity the proximity of the events is irrelevant. Plaintiff attempts to avoid this ruling by again asserting that a material dispute exists over the identity of the decision maker. As discussed above, any alleged dispute in the evidence about whether Sower, Beckner, or Hink made the decision to terminate is not material because there is no evidence that any of the three had knowledge of Plaintiff's protected activity.

Plaintiff next attempts to argue that Defendant has been untruthful in this case. Plaintiff's focus in this regard relates to her asserted protected activity, an issue that is not being contested for purposes of this motion. Plaintiff seeks to take an element that is not at issue to argue that discrepancies between witnesses' recollections creates a question of fact precluding summary judgment. Plaintiff claims that a difference of opinion between Plaintiff and Lammers about the discussion on July 20th is evidence Lammers lied because the facts must be viewed in a light most favorable to Plaintiff for purposes of this motion. If this were true then summary judgment would

9

cease to exist. Plaintiffs and defendants very rarely agree on all the facts in a case but under Plaintiff's logic any time there is a factual discrepancy the defendant is lying and a question of fact exists. In support, Plaintiff's cites *Baines v Walgreen Co.*, 863 F.3d 656, 665 (7th Cir. 2017), however, that case does not support Plaintiff's position. *Baines* involved a job applicant who asserted a retaliation claim based on a manager who handled an earlier EEOC claim intervening in the hiring decision in ways that deviated from standard practice. The individual that was eventually hired testified that she was told by her boss that she wanted to hire the plaintiff but the manager would not let her. The court found that the irreconcilable stories about the reason for the adverse action permitted the inference of discriminatory animus. Here, there is no conflict about the reason given for ending Plaintiff's assignment. Moreover, knowledge of the prior protected activity by the decision maker manager was established in *Baines* but does not exist in this case.

Lastly, Plaintiff claims that a question of fact exists under the burden shifting framework of *McDonnell Douglas*. Put simply, Plaintiff's effort in this regard fails because she cannot present any evidence that the decision maker knew about the protected activity. This knowledge requirement exists under both the direct and indirect method of proof, with "proof of retaliation under the indirect method presuppos[ing] that the decision-maker knew that the plaintiff engaged in a statutorily protected activity, because if an employer did not know the plaintiff made any complaints, it cannot be trying to penalize him for making them." *Tomanovich*, 457 F.3d at 668–69 (citation omitted) (internal quotation marks omitted). In addition, Plaintiff simply disputes the merit of Defendant's business decision, which is insufficient to establish a pretext under the burden shifting framework. "'The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered' for the adverse action." *Liu v Cook County*,

817 F.3d 307, 316 (7th Cir. 2016) (quoting *O'Leary v Accretive Health, Inc.*, 657 F.3d 625, 635 (7th

Cir. 2011)).

WHEREFORE, Defendant respectfully requests that this Honorable Court grant its Motion

for Summary Judgment and dismiss Plaintiff's Complaint with prejudice.

Dated this 27th day of October, 2017.

/s/Rick J. Patterson
Rick J. Patterson (Pro Hac Vice)
POTTER, DeAGOSTINO, O'DEA & PATTERSON
2701 Cambridge Court, Suite 223
Auburn Hills, Michigan 48326
248.377.1700 p . 248.377.0051 f
rjpatterson@potterlaw.com

/s/Angela M. Sekerka
Angela M. Sekerka
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
55 West Monroe Street, Suite 3800
Chicago, Illinois 60603-5016
312.704.0550 p / 312.704.1522 f
angela.sekerka@wilsonelser.com

ATTORNEYS FOR DEFENDANT KELLY SERVICES, INC.

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on October 27, 2017, she
caused the foregoing pleading to be filed with the court by electronic filing protocols
using the CM/ECF system, and that a copy of the same will therefore be
electronically served upon all attorneys of record registered with the court's CM/ECF
system.

/s/RICK J. PATTERSON

11