IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRENDA BROWN, | ) |
| | ) |
| Plaintiff, | ) Civil Action No.: 1:16-cv-11152 |
| | ) |
| v. | ) Judge Marvin E. Aspen |
| | ) |
| KELLY SERVICES, INC, | ) Magistrate Judge Sheila M. Finnegan |
| | ) |
| Defendant. | ) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
STATEMENT OF ADDITIONAL FACTS
<u>JUSTIFYING THE DENIAL OF SUMMARY JUDGMENT</u>**

NOW COMES Defendant, KELLY SERVICES, INC., by and through its attorneys, POTTER, DeAGOSTINO, O'DEA & PATTERSON and WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP, and in response to Plaintiff's Statement of Additional Facts Justifying the Denial of Summary Judgment, hereby states as follows:

1. Brown obtained her Bachelor's Degree from DeVry University and sought a career in human resources and talent acquisition. [Def. Exhibit A, Brown Dep p. 63 ln. 23 to p. 64 ln.1; p. 68 ln. 15-19]

<u>**RESPONSE**</u>:

**Admitted**.

2. After obtaining her bachelor's degree from DeVry University, she worked for DeVry as a recruiter and admissions advisor. Although the position was full-time and paid a salary of $20.91 per hour, it was unsatisfying to Brown because she did more sales than recruiting. [Def. Exhibit A, Brown Dep. P. 68 ln. 5 to p. 69 ln. 19]

RESPONSE:

**Denied to the extent that the paragraph states Plaintiff was working as a recruiter. The cited testimony states that she wanted to work as a recruiter but that role did not exist and she did not like the admissions job at DeVry University because it was like a sales job (Def. Exhibit A, Brown Dep., p. 68, ln 5- p 69, ln 19).**

3. While still employed at DeVry, Brown began speaking to Jennifer Lammers in March 2016 about a recruiting career at Kelly Services. Lammers is the branch manager of Kelly Services' Romeoville and Frankfort offices [Def. Exhibit D, Lammers p. 18 ln. 16 to p. 19 ln. 15]

RESPONSE:

**Denied that the testimony reflects any conversation about a "recruiting career at Kelly Services." The testimony reflects that Lammers discussed the position of "[a]n in house temporary recruiter" at Kelly (Def. Exhibit D, Lammers Dep., p. 18, ln 16 - p. 19, ln 1).**

4. Kelly Services needed more recruiters in 2016 because the year was "crazy". The job market was very tight and Defendant needed more people brought through the door to fill its accounts that needed forklift drivers and machine operators. [Def. Exhibit D, Lammers p. 20 ln 7-13]

RESPONSE:

**Admitted.**

5. Kelly Services was hiring recruiters because it expected continuous growth. It did not base the success of its business around peaks that come and go. [Def. Exhibit E, Hink Dep p. 18 ln 17 to p. 19 ln. 14]

RESPONSE:

**Denied that the testimony states Kelly was hiring recruiters. Ms. Hink testified that when hiring a temporary in house employee there is never a guarantee of full time employment, that there was no specific duration for Plaintiff's**

2

**assignment, and that the length of the assignment would be based on business needs (Def. Exhibit E, Hink's Dep., p. 17, ln 2 - 9).**

6. After approximately three telephone conversations, Lammers and Brown met to discuss the recruiting position. In these conversations, Brown discussed her desire for a career in human resources. Lammers explained that although the position was not human resources, recruiters have a lot of human resource responsibilities that can also get Brown to the next level. [Def. Exhibit A, Brown Dep p. 139 ln 1-13; Def Exhibit D, Lammers Dep. p. 21, ln. 9-16]

RESPONSE:

**Admitted.**

7. Brown informed Lammers she did not want a temporary position with a limited duration but wanted to advance her career by becoming a full time recruiter at Kelly Services. [Def Exhibit A, Brown Dep p. 69 ln. 20-24; Def Exhibit D, Lammers Dep. p. 20 ln. 24 to p. 21 ln. 6].

RESPONSE:

**Denied that the testimony indicates Plaintiff wanted to be a full time recruiter. Lammers testified that Plaintiff only indicated she wanted to be a full time employee of Kelly, not a recruiter (Def. Exhibit D, Lammers Dep., p. 20, ln 24 - p. 21, ln 2).**

8. Lammers explained to Brown that although the position was a temp-to-hire position, Brown would eventually be made a full time salaried employee, but Lammers could not commit to a specific date when that would occur.[Def Exhibit A, Brown Dep p. 139 ln. 21 to p. 140 ln. 12]

RESPONSE:

**Admitted. In addition, Ms. Hink testified that when hiring a temporary in house employee there is never a guarantee of full time employment, that there was no specific duration for Plaintiff's assignment, and that the length of the assignment would be based on business needs (Def. Exhibit E, Hink's Dep., p. 17, ln 2 - 9).**

3

9. Lammers believed Brown was very good and knew she had to get Brown more money than the $14 to $16 per hour they were paying at that time. They agreed to $17 per hour for a 40 hour work week. [Def. Exhibit D, Lammers Dep p. 19 ln. 9-20; p. 22, ln. 5-11]

RESPONSE:

**Admitted**.

10. Brown was the only person Lammers had talked to about the position and had been waiting for Brown. [Def. Exhibit D, Lammers Dep p. 24 5-8].

RESPONSE:

**Admitted**.

11. Lammers believed Brown had good performance and did not have any criticism of her performance. Similarly, no one ever complained about Brown's performance and she had a good working relationship with other employees. [Def. Exhibit D, Lammers p. 39 ln 17 to p. 30 ln. 13]

RESPONSE:

**Admitted**.

12. Defendant's Answer to the Complaint filed in this action denied the allegation that Brown performed her job duties in a satisfactory manner to warrant continued employment. That answer was false and Defendant concedes there was nothing wrong with Brown's performance. [Plf. Exhibit A-1, Complaint and Answer A-2, 8; Plf Exhibit B, Def. Answer to Interrogatories, No. 4.]

RESPONSE:

> **Defendant admits that at the time it filed its answer it was still gathering information regarding Plaintiff's employment with Kelly and her retaliation claim and responded to the allegation based on the information available at the time. This point is stated in Defendant's response to an interrogatory about Plaintiff's job performance where it indicates that Kelly is not aware of any**

4

**issues with Plaintiff's job performance (Plf Ex. B, Defendants Answers to Interrogatories, No. 4).**

13. Brown observed her co-worker, Nancy Spisak ignoring African Americans while getting up to greet and help non-African Americans. [Def. Exhibit A, Brown dep p. 103 ln. 5-7]

**RESPONSE**:

**Admitted. In addition, Plaintiff agreed that there were some interactions Spisak had with African American applicants that bothered her and there were other interactions Spisak had with African Americans that did not bother her (Def. Exhibit A, p. 79, ln 18-23).**

14. Spisak would assisted some applicants with their resume but told some African-Americans to go to the library to make their resume before they could apply. [Def. Exhibit A, Brown Dep p. 100 ln. 19 to p. 102 ln. 3]

**RESPONSE**:

**Admitted. In addition, Plaintiff agreed that there were some interactions Spisak had with African American applicants that bothered her and there were other interactions Spisak had with African Americans that did not bother her (Def. Exhibit A, p. 79, ln 18-23).**

15. Plaintiff observed Spisak being rude and nasty to African Americans, but not with other job applicants. [Def. Exhibit A, Brown Dep p. 102 ln. 22 to p. 103 ln. 2; p. 104 ln. 5-12]

**RESPONSE**:

**Denied the cited testimony states the allegation set forth. Plaintiff's did not testify that Spisak was nasty towards others, but that she had a nasty attitude. Also, nowhere in the cited testimony does Plaintiff state that Spisak did not exhibit the same traits with other applicants.**

16. At the initial meeting between Brown and Lammers on June 20, 2016, Brown does not recall using the term "race discrimination" but she did mention "race", "African Americans" and "blacks" in the meeting to get Lammers to "understand the issue that Brown was seeing Spisak do

5

to African-Americans." The gist of that conversation was about discrimination whether or not the actual word was used. [Def. Exhibit A, Brown Dep p. 96 ln 12-22; p. 177 ln 7-23]

RESPONSE:

**Admit Plaintiff testified as indicated.**

17. Lammers denies there was any mention of race in the June 20th meeting between her and Brown. [Def. Exhibit D, Lammers Dep. p. 41 ln. 12 to p. 42 ln 17; p. 44 ln 15-21]

RESPONSE:

**Admitted.**

18. After the initial meeting Lammers called everyone in, including Spisak and Conyers, to discuss interviewing and not treating anyone differently. [Def. Exhibit D, Lammers Dep. p. 52 ln 7-12]

RESPONSE:

**Admitted.**

19. In this meeting with everyone present, Brown specifically used the term "discrimination". [Def. Exhibit A, Brown Dep. p. 97 ln 7-13]

RESPONSE:

**Admit that Plaintiff testified as indicated.**

20. Spisak admits that Brown made a complaint to management about discrimination and there was a meeting in late June. [Plf. Exhibit C, IDES Transcript p. 13 ln. 4-15]

RESPONSE:

**Denied as stated. Spisak indicated that Plaintiff made a report to their manager, Lammers, not that she reported it to any management employee above the branch level (Plf Exhibit C, Transcript, p. 13, ln 7-8).**

21. Lammers denies that Brown ever complained about discrimination or that the gist of Brown's complaint during the meeting was that the African-American were being treated unfairly. According Lammers' testimony, there was nothing in the meeting that gave her the indication that Brown was complaining about discrimination. [Def Exhibit D, Lammers Dep. p. 51 ln. 2-18]

RESPONSE:

**Admitted.**

22. On the same morning after the June 20th meeting, Lammers emailed Brown, suggesting that she work at the Frankfort office 1-2 days a week to get extra training. [Plf. Exhibit D, June 20, 2016 email, p. Brown00023-24]

RESPONSE:

**Admitted.**

23. Following the meeting on June 20th, Brown felt Lammers was no longer as open to her as she had been and Spisak was hostile and rude while Brown was in the Romeoville office.[Def. Exhibit A, Brown Dep p. 33 ln 5-11; p. 38 ln 17 to p. 40 ln. 22; p. 52 ln 20- 24]

RESPONSE:

**Denied as stated. Nowhere in the cited testimony does Plaintiff state that Spisak was rude to her.**

24. Brown was sent to work at the Frankfort office on June 23, 24 and June 27, 2016. [Def. Exhibit A, Brown Dep p. 54 ln. 2-15, p. 55 ln. 13-18]

RESPONSE:

**Admitted.**

25. Following the meeting on June 20th, Brown felt she was no longer wanted and was being forced out. [Def. Exhibit A, Brown Dep p. 39 ln. 11 to 40 ln. 22]

RESPONSE:

**Admit Plaintiff testified as indicated.**

26. On Friday, June 24th, Brown wrote Lammers an email saying she was not going to quit or giving her two week notice. [Plf Exhibit D, June 24, 2016 Email, p. Brown00022-23]

RESPONSE:

**Admitted.**

27. On Monday, June 27th, Brown meet with Lammers at the Frankfort office and voiced her complaints about how Spisak was being hostile towards her after the meeting on June 20th. In response, Lammers asked Brown if she just wanted to give her two week notice. Brown replied that she can't give a two-week notice because she did not have another job and was banking on this job to work. [Def. Exhibit A, Brown Dep p. 47 ln 10 to p. 48 ln. 2]

RESPONSE:

**Admit Plaintiff testified as indicated.**

28. Lammers denies that Brown ever complained that Spisak was treating her disrespectfully.[Def. Exhibit D, Lammers Dep p. 72 ln 8-15]

RESPONSE:

**Admitted.**

29. Spisak initially stated the reason for Brown's termination was due to lack of work.[Plf Exhibit C, IDES Transcript p. 12, ln 13-16]

**RESPONSE:**

> **Denied as stated. The statement fails to place the statement from Spisak in context of the hearing. While the words "lack of work" were stated first, two lines later Spisak explained that it was due to budget reasons or lack of work to justify her position as an in house temporary (Plf Exhibit C, Transcript, p. 12, ln 16-22).**

30. At the time of her termination, there was work for Brown to perform.[Def. Exhibit D, Lammers Dep p. 74 ln 10-11; Def Exhibit E, Hink Dep 32, ln 20-24]

**RESPONSE:**

> **Admitted. In addition, Lammers testified that while she had work for Plaintiff business was down in the Chicagoland territory (Def. Exhibit A, Brown Dep., p. 73, ln 22 - p. 74 ln 1). Similarly, Hink testified that while there was work for Brenda, she had a directive to end in house temporary positions that she needed to follow (Def. Exhibit E, Hink Dep., p. 30, ln 22 - p. 31, ln 2; p. 32, ln 20 - 24).**

31. Hink testified that the reason for letting the temporary in-house recruiters go was "simply because of the ebb and flows of our business." Hink did not know specifically what the ebb and flow was that caused the directive to terminate the in-house temps, simply that "business drove the decision. That's - I don't have any other answer other than that" [Def. Exhibit E, Hink Dep p. 28 ln 21 to p. 29 ln. 3; p. 33 ln. 20 to p. 34 ln. 6; p. 40 ln. 2-13]

**RESPONSE:**

> **Admitted. In addition, Hink testified that the reason she could not provide specific information about why the decision was made was because she was not privy to the conversation between Beckner and Sowers (Def. Exhibit E, Hink Dep., p. 33, ln 20 - p. 34, ln 6).**

32. The decision to let temps go is not made on a branch by branch basis, rather it is whether the business for the area is growing or declining. [Def Exhibit E, Kink Dep p. 38 ln 19 to p. 39 ln. 15]

9

**RESPONSE**:

 **Admitted**.

 33. The Defendant has no documents, including communication, relating to the decision to end the Plaintiff's assignment due to a workforce reduction in the Chicago market. [Plf Exhibit B, Defendant's Answers to Interrogatories No. 5 (d); Plf Exhibit G, Defendant's Response to Plaintiff's Document Request, Nos. 23-25]

**RESPONSE**:

 **Admitted**.

 34. Defendant's Initial Rule 26a Disclosures served March 13, 2017 disclosed Lammers as a person having knowledge regarding Plaintiff's employment at Kelly Services. It did not disclose Sower, Hink and Beckner in its Initial Disclosures. [Plf Exhibit E, Defendant's Initial Rule 26a disclosures, ¶2]

**RESPONSE**:

 **Admitted. In addition, Hink and Beckner were identified in supplemental disclosures dated May 17, 2017 as witnesses believed to have information regarding the reason for ending Plaintiff's assignment as an in-house recruiter (Plf Exhibit F, Defendant's Supplemental Disclosures, p. 2).**

 35. The Defendant's Answers to Interrogatories, served April 17, 2017, identified Hink and Beckner as the only participants in the decision to end Plaintiff's job assignment. [Plf Exhibit B, Defendant's Answers to Interrogatories No. 5 (a)]

**RESPONSE**:

 **Admitted. In addition, Defendant's Response to Plaintiff's First Set of Interrogatories No. 1 indicates that the individual providing the information to respond to the interrogatories was Jennifer Lammers, who was told by Hink**

about the end of Plaintiff's assignment (Plt Exhibit B, No. 1; Def. Exhibit D, p. 60. ln 11-13; p. 73, ln 1-3, ln 11-14).

36. Hink and Beckner were disclosed in the Defendant's Supplemental Rule 26a disclosures, served May 17, 2017, as having information regarding the reason for ending Brown's assignment as an in-house Temporary Recruiter at the Romeoville Branch. Sower was not disclosed in any capacity. [Plf Exhibit F, Defendant's Supplemental Rule 26a Disclosures, ¶2]

RESPONSE:

**Admitted.**

37. After Brown was terminated on July 1, 2016, other in-house recruiters were hired in the Midwest region sometime before November 29, 2019 while Hink still served as the Area Manager. [Def. Exhibit E, Hink Dep. p. 10 ln. 10-13, p. 37 ln. 1-11]

RESPONSE:

**Denied as stated. Admitted that Hink testified other temporary in-house recruiters were hired after Plaintiff's assignment ended. However, Plaintiff was not terminated on July 1, 2016. Her assignment as an in-house recruiter ended that day. Plaintiff was offered subsequent positions but did not wish to pursue those positions (Def. SOF No. 55-62).**

38. Jason Dehn and Bryan Ramirez were disclosed in the Defendant's Answers to Interrogatories, served April 17, 2017 as the only individuals having the same job title as Plaintiff who had their assignments terminated by Defendant for the same or similar reason that the Plaintiff assignment was terminated. [Plf Exhibit B, Defendant's Answers to Interrogatories No. 5 (c)].

RESPONSE:

**Admitted.**

39. Except for Brown, no other employee at the Romeoville location has made a formal or informal complaint of discrimination from January 2012 up to the present. [Plf Exhibit B, Def. Answers to Interrogatories No. 6]

**RESPONSE**:

**Admitted**.

Dated this 27th day of October, 2017.

/s/Rick J. Patterson
Rick J. Patterson (Pro Hac Vice)
POTTER, DeAGOSTINO, O'DEA & PATTERSON
2701 Cambridge Court, Suite 223
Auburn Hills, Michigan 48326
248.377.1700 p . 248.377.0051 f
rjpatterson@potterlaw.com

/s/Angela M. Sekerka
Angela M. Sekerka
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
55 West Monroe Street, Suite 3800
Chicago, Illinois 60603-5016
312.704.0550 p / 312.704.1522 f
angela.sekerka@wilsonelser.com
ATTORNEYS FOR DEFENDANT KELLY SERVICES, INC.

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on October 27, 2017, she caused the foregoing pleading to be filed with the court by electronic filing protocols using the CM/ECF system, and that a copy of the same will therefore be electronically served upon all attorneys of record registered with the court's CM/ECF system.

/s/RICK J. PATTERSON